UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

INSURETY CAPITAL, LLC,
a Delaware limited liability company,

    Plaintiff,

v.

LDJ AMERICAN ONLINE BENEFITS, LLC,
a Texas limited liability company, and
PREMIER HEALTH SOLUTIONS, a Texas
limited liability company.

    Defendants.
_____/

## COMPLAINT

Plaintiff, **INSURETY CAPITAL, LLC**, a Delaware Limited Liability Company ("**Insurety**"), by and through undersigned counsel, files this complaint against Defendant, LDJ AMERICAN ONLINE BENEFITS, LLC, a Texas limited liability company ("**AOBG**"), and PREMIER HEALTH SOLUTIONS, LLC, a Texas limited liability company ("**PHS**" and together with AOBG the "**Defendants**"). In support, Insurety alleges as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. This is an action at equity for specific performance to require Defendants to comply with their contractual rights to Insurety (defined below), and for damages against the Defendants for breach of contract.

2. Insurety is a Delaware limited liability company with its principal place of business located in Miami, Florida.

3. AOBG is a Texas limited liability company with its principal place of business located in Addison, Texas.

4. PHS is a Texas limited liability company with its principal business in Frisco, Texas.

5. This Court has subject matter jurisdiction pursuant to 28 U.S. C. § 1332 (a)(1) as there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000.

6. Pursuant to 28 U.S.C. § 1391(c), venue is proper in the Southern District of Florida because the Contracts at issue were entered into and breached by the Defendants in the Southern District of Florida, where AOBG and PHS are subject to personal jurisdiction.

7. Venue is also proper in the Southern District of Florida because pursuant to Section 1.07(5) of the TPA Serving Agreement and Section 1.06(d) of the Exclusive Services Management Agreement, venue rests exclusively in Miami-Dade County, Florida.

## **FACTUAL BACKGROUND**

8. Insurety is a leading provider of short-term cash advances to independent marketing organizations ("**IMOs**"), allowing the IMOs to pay advance commissions to their independent insurance agents, commonly known as "producers."

9. More specifically, in today's insurance marketplace, IMOs serve as intermediaries between insurance carriers and independent insurance agents. The insurance carriers underwrite insurance policies while the IMOs market, distribute, and sell those policies through agents who are contracted with the IMOs. Insurance agents earn a commission on each insurance policy they sell, the amount of which varies based on the amount of the insurance premium. Due to the nature of insurance transactions, insurance agents typically do not receive their commissions until policyholders pay their policy premiums, usually on a monthly basis. Insurety offers IMOs the ability to satisfy and retain their insurance agents by advancing several months of future

commissions earned by the insurance agents. In exchange for the commission advance, Insurety acquires the rights to the agent's future insurance commissions, plus an administrative fee, which may be known as the Per Member Per Month fee ("**PMPM**").

10. On May 31, 2018, Insurety entered into an Exclusive Management Services Agreement (the "**EMSA**"), which was amended on or about November 8, 2018, with AOBG. A true and correct copy of the EMSA and Amendment to the ESMA is attached hereto as Composite Exhibit A.

11. Pursuant to the EMSA, Insurety agreed to act as the Buyer and AOBG agreed to act as the IMO for a period of five (5) years. *Id.*

12. As a part of the same transaction, on May 15, 2018, AOBG and PHS, acting as a third-party service provider, entered into an Administrative Services Agreement ("**ASA**"), and along with Insurety, a TPA Servicing Agreement (the "**TPA**," and collectively with the EMSA and the ASA, the "**Transaction Documents**."). A true and correct copy of the ASA is attached hereto as Exhibit B; and a true and correct copy of the TPA is attached hereto as Exhibit C.

13. The nature of the Transaction Documents entail that AOBG, as the IMO, will provide services to state licensed insurance carriers, insurance agents, agencies, groups of agencies, field marketing organizations and others ("**the Producers**") who earn commissions and fees on the insurance products they sell. Exh. A at pg 1 and Exh. C at pg 1.

14. However, because the Producers often desire to receive advances on the insurance commissions prior to the insurance commissions being paid by the IMO, Insurety agreed to purchase certain insurance commissions from the Producers and allow PHS, as the third-party servicer, to collect the premiums from the policy holder, service the payments previously owed to the Producers from those premiums, and distribute purchased assets to Insurety. *Id*.

15. Pursuant to the EMSA and for purposes of this lawsuit, AOBG was contractually required to:

    a. "[P]rovide [Insurety] with a report of Premiums collected on the Purchased Assets in a form and on a schedule as provided in <u>Exhibit C</u> attached to the TPA Servicing Agreement." Exh. A at §1.02(b).

    b. "[P]ay the amount paid for the Insurance Commissions plus 2% of the premium, plus $10.00 (ten dollars) PMPM for any insurance products that do include insurance coverage or protection for life or health insurance." *Id.* at §1.03(a)(2).

    c. "[P]ay the amount paid for the Insurance Commissions plus 2% of the premium, plus $2.50 (two dollars and fifty cents) PMPM for any insurance products that do not include coverage or protection for life or health." *Id.* at §1.03(a)(3).

    d. "[AOBG] agrees to indemnify [Insurety] from and against any and all damages, losses, claims, judgments, liabilities and related costs and expenses, including reasonable attorney's fees and disbursements, awarded against or incurred by [Insurety] relating to or resulting from or in connection with any of the following, other than any such loss which raise solely from the gross negligence or willful misconduct of [Insurety]:

        i. The material breach by the IMO or the TPA, if applicable, of the Servicing Standard or any other requirements in the Transaction Documents;

        ii. Any representation or warranty made in writing by or on behalf of [AOBG] under or in connection with this Agreement, or any other Transactional Documents;

        iii. The failure by [AOBG] to materially comply with any term, provision or covenant contained in this Agreement or any other of the Transaction Documents; or

        iv. [AOBG's] negligence, bad faith, or willful misconduct in connection with this Agreement, the Services, the Transaction Documents or any matter relating to the Purchased Assets.

*Id.* at § 1.05(a).

16. Pursuant to the TPA and for purposes of this lawsuit, PHS was contractually

required to:

    a.    "[P]rovide a monthly collection report and schedule pro forma (collectively, the "**Collection Report**") including the information required, at the time, and in substantially the same format, as [Insurety] has designated in Exhibit C attached hereto and incorporated herein. The Collection Report shall be provided no later than three (3) days after the 10th day of each month with remittance occurring no later than the 15th of each month." Exh. C at § 1.01(v).

    b.    "[PHS] and [AOBG] agree that all Policyholder payments shall be collected, via direct deposit, debit card or credit card or within three business days of the receipt of any non-direct deposit payment, in the Collection Account which is more specifically identified on Exhibit A attached hereto and incorporated herein (the "**Collection Account**"). [PHS] shall hold the Policyholder payments in trust, for the benefit of the insurance carrier, [Insurety], the producers, and [AOBG], as outlined below in 1.02(2). *Id.* at § 1.02(1).

    c.    "Indemnify [Insurety] from and against any and all damages, losses, claims, judgments, liabilities and related costs and expenses, including reasonable attorneys' fees and disbursements, awarded against or incurred by [Insurety] relating to or resulting from or in connection with any of the following, other than any such loss which arise solely from the gross negligence or willful misconduct of the Buyer:

        i.    The material breach by the IMO or the TPA of the terms of this Agreement, the Transactional Documents, or any other agreements related thereto;

        ii.    Any representation or warranty made in writing by or on behalf of the IMO or the TPA under or in connection with this Agreement, the Transactional Documents or any other agreement related thereto;

        iii.    The failure by the IMO or TPA to materially comply with any term, provision or covenant contained in this Agreement, the Transactional Documents, or any other agreement related thereto; or

        iv.    The IMO's or TPA's negligence, bad faith, or willful misconduct in connection with this Agreement, the Services or any matter relating to the Purchased Assets.

*Id.* at § 1.05.

17.    Thus, pursuant to the agreed upon terms in the Transaction Documents, the

Defendants were independently obligated to a) provide Insurety with the monthly Collection Reports for all polices covered under the EMSA on or before February 15, 2020, and b) remit the PMPM fees occurring.

18. Notwithstanding the Defendants' contractual obligations, to date, no Collection Reports have been submitted to Insurety, nor has there been any remittance of PMPM payments paid to Insurety for the Purchased Assets for February of 2020 or any time thereafter.

19. On February 20, 2020, Insurety requested a resolution of the outstanding collection reports and remittance due from the Defendants.

20. AOBG responded in a letter with an offer whereby AOBG agreed to make equal payments of the renewals payable. However, the same letter also stated that it was AOBG's opinion that no further fees would be remitted thereafter.

21. This offer was rejected by Insurety through various communications, as it is the contractual duty of AOBG to remit fees until the policies associated with the insurance product terminate upon cancellation.

22. To date, Insurety has still not received a Collection Report or remittance payments since February of 2020 for the Insurance Commissions that it has advanced for the Producers.

23. Insurety has retained the undersigned attorneys to pursue its claims against Defendants, and has agreed to pay the undersigned attorneys a reasonable fee for their services.

24. Insurety is entitled to its attorney's fees and costs pursuant to Section 1.05(a) of the ESMA and Section 1.05(1) of the TPA.

25. All conditions precedent to the commencement and maintenance of this action have been satisfied, performed, waived, or otherwise discharged.

## COUNT I - BREACH OF CONTRACT (AOBG)

26. Insurety repeats and realleges the allegations contained in paragraphs 1 through 15, and 17-25 as if fully set forth herein.

27. This is an action for damages for breach of contract.

28. Insurety and AOBG have a valid binding contract wherein AOBG agreed to remit to Insurety PMPM fees for the insurance commissions bought by Insurety and send the corresponding monthly Collection Reports. *See* Exh. A at 1.02(b), 1.03(a), and 1.03(b).

29. AOBG breached that Contract by failing to provide Insurety with its Collection Reports on or before February 15, 2020 and by failing to remit payment for the PMPM fees on or before February 18, 2020.

30. As a result of AOBG's breach, Insurety has been damaged in the amount of overdue PMPM fees, including interest accruing on all outstanding amounts.

31. Insurety is entitled to an award of legal fees and costs it has been forced to incur in enforcing this Contract pursuant to §1.05(a) of the ESMA and § 1.05(1) of the TPA. *Id.* and Exh C.

**WHEREFORE**, Plaintiff, **INSURETY CAPITAL, LLC,** a Delaware limited liability company, demands judgment in its favor and against Defendant, **LDJ AMERICAN ONLINE BENEFITS, LLC**, for damages, interest, costs, attorney's fees, and any other relief deemed just and proper.

## COUNT II- BREACH OF CONTRACT (PHS)

32. Insurety repeats and realleges the allegations contained in paragraphs 1 through 9, 12-14, and 16-25 as if fully set forth herein.

33. This is an action for damages for breach of contract.

34. Insurety and PHS have a valid binding contract wherein PHS agreed to hold the

policy holder payments in trust for the benefit of Insurety, the Producers, and the IMO. Exh. C. at § 1.02(1).

35. PHS also agreed to "take any and all steps to maintain and protect [Insurety's] rights and not allow any party to take steps to interfere with Insurety's rights" and to send the Collection Reports "no later than three (3) days after the 10th day of each month." *Id.* at § 1.04(iii); and *Id.* at § 1.01(v).

36. PHS breached that Contract by failing to remit payment to Insurety that it is obligated to hold in trust, which subsequently equated to a breach of failing to maintain steps to protect Insurety's rights.

37. PHS also breached the Contract by failing to send the monthly Collection Reports for the advance funding provided in February of 2020 and thereafter.

38. As a result of PHS' breaches, Insurety has been damaged in the amount of overdue PMPM fees, including interest accruing on all outstanding amounts.

39. Insurety is entitled to an award of legal fees and costs it has been forced to incur in enforcing this Contract pursuant to section 1.05(1) of the TPA. Exh. C.

**WHEREFORE**, Plaintiff, **INSURETY CAPITAL, LLC,** a Delaware limited liability company, demands judgment in its favor and against Defendant, **PREMIER HEALTH SOLUTIONS, LLC**, for damages, interest, costs, attorney's fees, and any other relief deemed just and proper.

## COUNT III- SPECIFIC PERFORMANCE (AOBG)

40. Insurety repeats and realleges the allegations contained in paragraphs 1 through 15, and 17-25 as if set forth fully herein.

41. This is an action for specific performance of the EMSA Agreement, which required

8

AOBG to provide Insurety with the monthly Collection Reports of the premiums collected on the purchased assets no later than three days after the 10th day of each month . Exh. A. at § 1.02(b).

42.     The EMSA agreement is a valid and binding contract between AOBG and Insurety. *Id.*

43.     AOBG breached the agreement by failing to send Insurety the Collection Reports for February 2020 through the present.

44.     Insurety does not have an adequate remedy at law.

45.     Insurety will be irreparably harmed if AOBG is not required to submit to Insurety the Collection Reports from February of 2020 through the present.

**WHEREFORE, INSURETY CAPITAL, LLC**, respectfully requests that this Court grant judgment in its favor and against Defendants, **LDJ AMERICAN ONLINE BENEFITS, LLC**, requiring specific performance of the ESMA agreement, by compelling AOBG to send the monthly Collection Reports for February of 2020 through today, and award damages incidental to the equitable relief requested herein, together with reasonable attorney's fees and costs and such other relief deemed just, equitable, and proper.

## COUNT V- SPECIFIC PERFORMANCE (PHS)

46.     Insurety repeats and realleges the allegations contained in paragraphs 1 through 9, 12-14, and 16-25 as if set forth fully herein.

47.     This is an action for specific performance of the TPA Agreement, which required PHS to provide Insurety with the monthly Collection Reports of the premiums collected on the purchased assets no later than three days after the 10th day of each month. *Exh. C. at § 1.01(v).*

48.     The TPA agreement is a valid and binding contract between AOBG, PHS, and Insurety. *Id.*

49. PHS breached the agreement by failing to send Insurety the Collection Reports for February 2020 through the present.

50. Insurety does not have an adequate remedy at law.

51. Insurety will be irreparably harmed if PHS is not required to submit to Insurety the Collection Reports from February of 2020 through the present.

**WHEREFORE, INSURETY CAPITAL, LLC**, respectfully requests that this Court grant judgment in its favor and against Defendant, **PREMIER HEALTH SOLUTIONS, LLC,** requiring specific performance of the TPA agreement, by compelling PHS to send the monthly Collection Reports for February of 2020 through today, and award damages incidental to the equitable relief requested herein, together with reasonable attorney's fees and costs and such other relief deemed just, equitable, and proper.

Dated: May 2, 2022

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**
*Attorneys for Plaintiff*
701 Brickell Avenue, 17th Floor
Miami, Florida 33131
Telephone: (305) 428-4500
John.Gekas@saul.com
Ashley.Saul@saul.com
Aida.Mclaughlin@saul.com
mia-ctdocs@saul.com

By: */s/ Ashley H. Saul*
    Ashley H. Saul
    Florida Bar No. 1025690